UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT CARNELL,

Plaintiff,

v.

GENE G. MYERS, SR.; THOMAS
FORTUNE; HOWARD A. ZUCKER, M.D.;
and LEE BURNS,

Defendants.

No. 17-CV-7693 (KMK)

OPINION & ORDER

Appearances:

John V. Janusas, Esq.
Brooklyn, NY
*Counsel for Plaintiff*

James M. Hershler, Esq.
Bradford S. Glick, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Robert Carnell ("Plaintiff") brings this Action, pursuant to 42 U.S.C. §§ 1981 and 1983,

against Gene G. Myers ("Myers"), Senior Continuing Medical Education Representative for the

New York State Department of Health ("DOH"); Thomas Fortune ("Fortune"), DOH

Representative; Howard A. Zucker ("Zucker"), DOH Commissioner; and Lee Burns ("Burns"),

then-Director of DOH's Bureau of Emergency Medical Services ("BEMS") (collectively,

"Defendants"). Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by

coercing him into surrendering his Emergency Medical Technician – Paramedic ("EMT-P")

license. Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot.

(Dkt. No. 21).) For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl. (Dkt. No. 1)), and are taken as true for the purpose of resolving the instant Motion.

In 2000, Plaintiff obtained his EMT-P license and began working as a certified EMT-P. (Compl. § E, ¶ 1.)[1]  In 2013, Plaintiff completed his Continuing Medical Education ("CME") requirements to obtain recertification of his EMT-P license.  (*Id.* ¶¶ 2–3.)[2]  Plaintiff thereafter sought the signature of an Advanced Life Support Agency ("ALSA") representative to verify that the CME requirements had been completed.  (*Id.* ¶ 3.)  However, "for various reasons," which are unexplained, Plaintiff "could not obtain an ALSA representative's signature."  (*Id.* ¶ 4.)  Plaintiff thus contacted DOH seeking guidance.  (*Id.* ¶ 5.)  Plaintiff spoke with Myers, who stated that Plaintiff could submit his recertification paperwork without the signature.  (*Id.* ¶ 6.)  Pursuant to Myers' guidance, Plaintiff timely submitted his recertification application, along with supporting materials, on December 15, 2013.  (*Id.* ¶ 7.)  In February 2014, Plaintiff received his EMT-P license recertification in the mail.  (*Id.*)  Plaintiff continued to work until August 2014.  (*Id.* ¶ 8.)

In August 2014, Plaintiff received correspondence from Myers informing him that DOH

---

[1] According to the Complaint, an EMT-P typically "responds to 911 calls for medical or traumatic injuries," "assesses the patient's condition," "forms a treatment plan," "communicates with an Emergency Physician for further questions or orders," and "transport[s] the patient to the hospital" for further medical care.  (Compl. § E, ¶ 1.)

[2] 10 N.Y.C.R.R. Part 800 lays out the requirements to gain and maintain an EMT-P certification.  *See, e.g.*, 10 N.Y.C.R.R. § 800.6 (describing initial certification requirements); *id.* § 800.9 (allowing recertification without retaking examinations by satisfying CME requirements); *id.* § 800.16 (describing circumstances in which certification may be suspended or revoked); *id.* § 800.17 (requiring renewal of certification every three years).

was "conducting an investigation regarding the circumstances of [his] recent recertification." (*Id.*; *see also* Compl. Ex. B ("Myers Letter")).) The correspondence requested Plaintiff schedule an interview "to come to a fair and accurate conclusion regarding [his] certification." (Myers Letter.) Plaintiff called Myers, who informed Plaintiff that a signature was present in the place where the ALSA representative was supposed to sign, that Plaintiff was "in big trouble and that [DOH] was investigating" a possible forgery, and that Myers had "three statements from people indicating they knew that [the] signature was a forgery." (Compl. § E, ¶ 9.)

Plaintiff met with Myers and Fortune on October 7, 2014, in an interrogation room within the State Trooper Barracks in Liberty, New York. (*Id.* ¶¶ 10–11.) At the meeting, Myers and Fortune showed Plaintiff the suspected forged document. (*Id.* ¶ 11.) Plaintiff denied that he had engaged in a forgery, stated that he did not know whose signature was on the form, and speculated that someone in Myers's and Fortune's office might have signed the form. (*Id.* ¶¶ 12–13.) Fortune "became irate and screamed at [Plaintiff] that he 'knew that [he] [was] lying' and that it was 'pissing him off.'" (*Id.* ¶ 13.) Plaintiff asked Myers and Fortune to show him the three witness statements Myers had earlier claimed pointed the finger at Plaintiff. (*Id.* ¶ 14.) Myers and Fortune responded "that they did not have the statements with them." (*Id.*)

Myers and Fortune then stated that they would make the situation "very easy" on Plaintiff and "presented him with a form entitled 'Voluntary Surrender of Emergency Medical Technician Certification.'" (*Id.* ¶ 15.) Myers and Fortune stated that, if Plaintiff signed the form and surrendered his EMT-P license "that day", then "nothing bad will be said about [him]," but that if Plaintiff "did not sign the form" and surrender his license, "he would 'go to jail' that day." (*Id.*) Plaintiff signed the form "due to the duress and threats of immediate arrest," and "thereby surrendered his EMT-P license." (*Id.* ¶¶ 16–17; *see also* Compl. Ex. C. ("Pl.'s Surrender

Form").)

Since surrendering his license and leaving his employment as an EMT-P, Plaintiff "has been unable to find other work and has been forced to survive without any significant income or support." (Compl. § E, ¶ 21.) Plaintiff seeks $1 million in damages as well as equitable relief in the form of the restoration of his EMT-P license. (*Id.* ¶¶ 26–27.)

B.  Procedural Background

Plaintiff filed his Complaint on October 6, 2017. (Compl.) On January 12, 2018, Defendants filed a letter seeking a pre-motion conference in anticipation of moving to dismiss. (Dkt. No. 17.) Plaintiff responded on February 16, 2018. (Dkt. No. 19.) The Court thereafter set a briefing schedule. (Dkt. No. 20.) On April 2, 2018, Defendants filed their Motion To Dismiss and accompanying papers. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem") (Dkt. No. 24); Decl. of Bradford S. Glick, Esq. in Supp. of Mot. (Dkt. No. 25).) Plaintiff filed his response on May 18, 2018. (Decl. of John Janusas, Esq. in Opp'n to Mot. (Dkt. No. 31); Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 32).) On June 4, 2018, Defendants filed their reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 33).)

II.  Discussion

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Defs.' Mem. 1.)

A.  Standard of Review

"The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical." *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court

must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation marks omitted)). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)). This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)

(describing subject matter jurisdiction as the "threshold question" (quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)). "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

### B.  Analysis

Defendants move to dismiss the Complaint on grounds that Plaintiff fails to state a procedural due process, substantive due process, or equal protection claim; that Plaintiff fails to allege the personal involvement of Zucker and Burns; that Defendants are immune from damages claims brought against them in their official capacities; and that Defendants are entitled to qualified immunity from damages claims brought against them in their individual capacities. (*See* Defs.' Mem. 7–20.)  The Court addresses each argument separately to the extent necessary.

#### 1.  Eleventh Amendment Immunity

Plaintiff sues Defendants in both their official and individual capacities, (Compl. § A, ¶¶ 2(a)–(d); *id.* § E, ¶¶ 20–25), and seeks both compensatory damages and prospective equitable relief in the form of the restoration of his license, (*id.* § E, ¶¶ 26–27).

A suit for damages against a state official in his or her official capacity "is deemed to be a

suit against the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office." (citation omitted)). Accordingly, an official sued in his or her official capacity is "entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court has] extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted). In other words, "the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation, quotation marks, and alterations omitted). No waiver or abrogation of immunity is present here. Plaintiff brings suit under 42 U.S.C. §§ 1981 and 1983, neither of which operate as waivers of sovereign immunity. *See Ying Jing Gan*, 996 F.2d at 536 ("[A]lthough § 1983 imposes liability on every 'person' who, under color of state law or custom deprives another of a federal right, neither a state nor a state official sued in his official capacity is a 'person' within the meaning of this section." (citing *Will*, 491 U.S. at 64, 71)); *Murray v. Thomason*, No. 17-CV-7004, 2018 WL 5113955, at *4 (S.D.N.Y. Oct. 19, 2018) ("Courts have routinely held that New York has not waived, and Congress has not abrogated, sovereign

immunity with respect to claims for constitutional violations under Sections 1981, 1983, or 1985." (collecting cases)); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under [§] 1983 in their official capacities." (citing *Will*, 491 U.S. at 64)); *see also Bamba v. Fenton*, — F. App'x —, 2018 WL 6331611, at *3 (2d Cir. Dec. 4, 2018) ("[S]overeign immunity bars [the plaintiff's] § 1981 claim against [the state defendant]."). Accordingly, Plaintiff's claims for damages against Defendants in their official capacities are dismissed with prejudice.[3]

### 2. Procedural Due Process Claim

Defendants argue that Plaintiff fails to state a procedural due process claim because he "had adequate opportunity to challenge the purportedly coerced surrender of his EMT-P license in a state court CPLR Article 78 proceeding, but failed to utilize that constitutionally adequate procedure." (Defs.' Mem. 7.) The Court agrees.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause thus "bars arbitrary, wrongful government actions, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property." *Wiesner v. Rosenberger*, No. 98-CV-1512, 1998 WL 695927, at *3

---

[3] However, Plaintiff's claims for prospective injunctive relief brought against Defendants in their official capacities, as well as Plaintiff's claims for damages brought against Defendants in their individual capacities, are not barred by the Eleventh Amendment. *See Ying Jing Gan*, 996 F.2d at 529 ("As to a claim brought against [a state official] in his individual capacity, . . . the state official has no Eleventh Amendment immunity."); *JTE Enters.*, 2 F. Supp. 3d at 340 ("[P]rospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law." (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), and *Ex Parte Young*, 209 U.S. 123 (1908))).

(S.D.N.Y. Oct. 6, 1998) (citing *Daniels v. Williams*, 474 U.S. 327, 330–32 (1986)). "The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (citation, alterations, and quotation marks omitted). "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Defendants do not argue that Plaintiff lacks a property interest to which a due process right attaches. (*See* Defs.' Mem. 7–9.) Indeed, because Plaintiff's EMT-P license "had already been issued at the time of" the revocation and resignation, and because the State "does not have unfettered discretion to revoke or suspend [EMT-P] licenses," Plaintiff has "a protected property interest" in his EMT-P license. *Nnebe v. Daus*, 184 F. Supp. 3d 54, 65 (S.D.N.Y. 2016); *see also* 10 N.Y.C.R.R. § 800.16 (providing that an EMT-P license may be revoked only "if [DOH] finds that the certificate holder" has violated one of fourteen specified requirements).

The only question, then, is whether the process Plaintiff was afforded was sufficient. Plaintiff maintains that Myers and Fortune violated his procedural due process rights by coercing him into resigning without first offering him a formal pre-termination hearing pursuant to New

York law. (Pl.'s Mem. 9–15; Compl. § E, ¶¶ 18–19 (citing 10 N.Y.C.R.R. § 800.16 (providing

that an EMT-P "certification . . . may be . . . revoked . . . after a hearing conducted pursuant to

section 12-a of the Public Health Law")). That Plaintiff was not offered a pre-termination

hearing in violation of applicable law, however, does not necessarily state a constitutional

violation. "When reviewing alleged procedural due process violations, the Supreme Court has

distinguished between (a) claims based on established state procedures and (b) claims based on

random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm.

(HANAC) v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing, *inter alia*, *Hudson v.

Palmer*, 468 U.S. 517, 532 (1984)). The Complaint does not allege that Defendants acted

pursuant to established state procedures in allegedly coercing Plaintiff into surrendering his

license without first offering him a formal hearing; to the contrary, the Complaint alleges

Defendants violated such procedures. (*See* Compl. § E, ¶¶ 18–19.) Plaintiff's claim must, then,

be based on Defendants' "random, unauthorized acts." *HANAC*, 101 F.3d at 880. The Second

Circuit has held that, for such claims, "the Due Process Clause of the Fourteenth Amendment is

not violated when a state employee intentionally deprives an individual of property or liberty, so

long as the State provides a meaningful postdeprivation remedy." *Id.* (citing *Hudson*, 468 U.S. at

531). Put differently, where a state employee's random, unauthorized act makes "a pre-

deprivation hearing . . . impractical and a post-deprivation hearing is meaningful, the State

satisfies its constitutional obligations by providing the latter." *Stokes v. City of Mount Vernon*,

No. 11-CV-7675, 2012 WL 3536461, at *9 (S.D.N.Y. Aug. 14, 2012) (quoting *Giglio v. Dunn*,

732 F.2d 1133, 1135 (2d Cir. 1984)), *modified in part on reconsideration*, 2012 WL 6691078

(S.D.N.Y. Dec. 17, 2012). That is because "it is hard to visualize what sort of prior hearing the

Constitution would require the employer to conduct." *Weslowski v. Zugibe*, 14 F. Supp. 3d 295,

315 (S.D.N.Y. 2014) (quoting *Giglio*, 732 F.2d at 1135). "When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Giglio*, 732 F.2d at 1135.

Here, New York law provides that state employees may contest adverse employment determinations pursuant to an Article 78 proceeding in state court. *See* N.Y. C.P.L.R. §§ 7801–7806. The Second Circuit has squarely held that a post-deprivation hearing via the Article 78 process satisfies constitutional due process requirements. *Giglio*, 732 F.2d at 1135 ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."); *see also Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); *HANAC*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate postdeprivation remedy." (citation omitted)). Further, district courts in this Circuit "have subsequently applied *Giglio*'s holding that the availability of an Article 78 proceeding satisfies procedural due process in a case where a New York state employee claims a coerced resignation." *Dodson v. Bd. of Educ. of the Val. Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 248–49 (E.D.N.Y. 2014) (collecting cases). That is so even where the employee did "not . . . avail himself of the process he was due." *Paterno v. City of New York*, No. 17-CV-8278, 2018 WL 3632526, at *6 (S.D.N.Y. July 31, 2018); *see also Cole-Hatchard v. Hoehmann*, No. 16-CV-5900, 2017 WL 4155409, at *7 (S.D.N.Y. Sept. 18, 2017) ("An Article 78 proceeding adequately serves as a post-deprivation name-clearing hearing. Plaintiff's failure to avail himself of [the Article 78] proceeding means he was not denied due process." (citations, quotation marks, and alteration omitted)); *Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448,

458 (E.D.N.Y. 2015) ("[B]ecause an adequate post-deprivation remedy exists for review of plaintiff's expulsion, there can be no Fourteenth Amendment violation to support a [§] 1983 claim." (citing *HANAC*, 101 F.3d at 880–82)), *aff'd*, 643 F. App'x 7 (2d Cir. 2016). Plaintiff had adequate opportunity to challenge the voluntariness of his resignation. Therefore, "it is quite clear that the availability of an Article 78 proceeding precludes Plaintiff's procedural due process claim." *Dodson*, 44 F. Supp. 3d at 249.

In an effort to avoid dismissal, Plaintiff raises three principal arguments.[4] First, Plaintiff contends that Myers and Fortune did not tell Plaintiff "anything about his right to due process, his right to an administrative hearing, a suspension pending a hearing, or any[]" other process. (Pl.'s Mem. 7.) Plaintiff also contends that, unlike in *Giglio*, in which the plaintiff did not avail himself of an Article 78 proceeding on the advice of his attorney, here Plaintiff had no representation. (*Id.* at 10.) Yet, even assuming their truth, these facts do not change the analysis. The core inquiry is whether a constitutionally adequate post-deprivation process was *available*, not whether Plaintiff was informed of the process. *See, e.g.*, *Dodson*, 44 F. Supp. 3d at 243, 248–49 (dismissing procedural due process claim alleging that the defendants, without informing the plaintiff of the availability of an Article 78 hearing, "misled him into believing that . . . he would be terminated" and "could go to jail if he did not sign the waiver" (alteration omitted));

---

[4] Plaintiff also contends that he "is not barred from seeking injunctive relief in this action" under *Ex Parte Young* and, therefore, that "it is simply false tha[t] an Article 78 proceeding is [his] only proper means to seek this relief." (Pl.'s Mem. 11.) The former proposition is correct: as noted, under the *Young* doctrine, Plaintiff's claim seeking reinstatement of his EMT-P license, brought against Defendants in their official capacities, is not barred by the Eleventh Amendment. *See Ying Jing Gan*, 996 F.2d at 529. Yet, the latter proposition does not follow, for *Young* has nothing to do either with procedural due process in general or the more specific question whether a post-deprivation Article 78 proceeding may satisfy due process. Indeed, Plaintiff cites to no case standing for the proposition that otherwise sufficient process may be rendered insufficient by virtue of the relief sought.

*Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 367, 371–72 (E.D.N.Y. 2014) (dismissing procedural due process claim where the plaintiff — who was "told to immediately sign the resignation letters presented to him, otherwise he would be arrested and prosecuted, would never lose again[,] and would lose his benefits" — could have availed himself of a postdeprivation Article 78 proceeding).

Second, Plaintiff argues that, because he seeks "damages for . . . civil rights violations," which may not be available to him in an Article 78 proceeding, (Pl.'s Mem. 10 (collecting New York state cases)), he was excused from not pursuing such a remedy. Yet, the Second Circuit has squarely held that "[a]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief in a § 1983 suit." *HANAC*, 101 F.3d at 881 (citing *Hudson*, 468 U.S. at 535); *see also Kubicek v. Westchester County*, No. 08-CV-372, 2013 WL 5423961, at *7 n.11 (S.D.N.Y. Sept. 27, 2013) (applying *HANAC* to reject argument that a damages claim "would have faced tough sledding" in an Article 78 proceeding).

Finally, Plaintiff argues that, in signing the surrender form, he agreed — without being notified by Myers and Fortune — to a provision stating that he "voluntarily surrender[s]" his license, "accept[s] the terms and conditions herein[,] and waive[s] the right to challenge the terms of this surrender pursuant to [an] Article 78" or other proceeding, and was thereby denied "a meaningful opportunity to contest the allegations made against him." (Pl.'s Mem. 13–14 (citing Pl.'s Surrender Form).) Defendants argue in response that the surrender form's waiver provision is in fact narrower than Plaintiff contends because, by its plain language, the waiver applies only to challenges to the "terms of this surrender" itself — terms such as the immediate effectiveness of surrender, that Plaintiff "shall not seek re-certification" of his license or "any other patient care related license," that the "Department will report any final disposition of this

matter" to other agencies, and that "the Department will not publish . . . any information" about the surrender. (Defs.' Reply 4 (quoting Surrender Form).) The Court need not, however, resolve the scope of the waiver provision. Even assuming the waiver is as broad as Plaintiff maintains, in an Article 78 proceeding challenging the voluntariness of his surrender, Plaintiff could have litigated the closely related question of the voluntariness of signing the waiver provision. *See* CPLR § 7803(3) (providing that, in an Article 78 proceeding, a petitioner can raise the question whether "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including an abuse of discretion as to the measure or mode of penalty or discipline imposed"). Put differently, in an Article 78 proceeding in which Defendants had raised the waiver provision as a defense, the two questions — whether the surrender itself was voluntary and whether the signing of the surrender form with the waiver provision was voluntary — merge. *See Giglio*, 732 F.2d at 1132 (noting that, "[w]hen an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary"). Finally, Plaintiff cites to no case, and the Court has found none, in which a New York state court dismissed an Article 78 proceeding on grounds that the petitioner had waived his right to one.[5] Therefore, it is not the case that the surrender form's waiver

---

[5] Moreover, because "constitutional issues can be decided in Article 78 proceedings," *HANAC*, 101 F.3d at 881, and because Plaintiff "has a constitutionally protected property right to bring an Article 78 proceeding, both because it is a statutorily created cause of action and because the State relies upon it to satisfy the requirements of due process," *Morris v. N.Y.C. Emps.' Ret. Sys.*, 129 F. Supp. 2d 599, 608 (S.D.N.Y. 2001), Plaintiff could have litigated the question of the constitutionality of the surrender form's waiver provision in an Article 78 proceeding. *See, e.g.*, *Borum v. Village of Hempstead*, 590 F. Supp. 376, 378–79 (E.D.N.Y. 2008) (describing the plaintiff's Article 78 proceeding, in which he challenged the constitutionality of the defendant employer's leave policy), *modified in part on reconsideration*, No. 08-CV-1488, 2009 WL 10709173 (E.D.N.Y. Feb. 25, 2009). The Court notes that the Complaint does *not* allege that the waiver provision itself violates procedural due process. (*See* Compl. § E, ¶¶ 1–27; *id.* at 9 (describing procedural due process claim).)

provision rendered impossible an Article 78 proceeding.[6]

In sum, Plaintiff was not meaningfully deprived access to a post-deprivation Article 78 proceeding. That Plaintiff failed to avail himself, or attempt to avail himself, of that process is immaterial. *See Anemone v. Metropolitan Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) ("An Article 78 proceeding provides the requisite post-deprivation process — even if [the plaintiff] failed to pursue it."). Accordingly, Plaintiff's procedural due process claim is dismissed with prejudice. *See Dodson*, 44 F. Supp. 3d at 249 (dismissing procedural due process claim with prejudice where an Article 78 proceeding was available and unutilized).

### 3. Substantive Due Process Claim

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (citation and quotation marks omitted); *see also Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d

---

[6] Defendants point to the case of *Guttilla v. City of New York*, No. 14-CV-156, 2015 WL 437405 (S.D.N.Y. Feb. 3, 2015), as instructive. (*See* Defs.' Reply 5.) There, a tenured teacher investigated for misconduct signed a settlement agreement with the New York City Department of Education ("Department") and resigned. *Guttilla*, 2015 WL 437405, at *2. The settlement contained a broad waiver provision requiring the teacher to "knowingly waive her right to make any legal or equitable claims or to initiate legal or administrative proceedings of any kind against the Department or against its employees, relating to or arising out of these proceedings, except to enforce this [settlement]." *Id.* (quotation marks and alterations omitted). The teacher thereafter brought suit, alleging among other things that she "forced," "harassed," and "coerced into signing the [settlement]" in violation of her procedural due process rights. *Id.* at *8. The court, however, dismissed the claim because "the procedure available to her after she signed the [settlement]" — an Article 78 petition — "satisfied the constitutional mandate" of procedural due process. *Id.*

Yet, although the court's conclusion was not altered by the broad waiver provision, this case appears to be of only limited utility here. In dismissing the procedural due process claim, the court did not squarely consider how the waiver provision affected its analysis. *See id.* at *8–9. That may have been because the teacher "[did] not contest that she could have sought relief through an Article 78 proceeding." *Id.* at *9. Here, however, Plaintiff does raise the argument that he could not have sought relief through an Article 78 proceeding.

Cir. 1994) (same) (collecting cases in each category). "To state a claim for substantive due process a plaintiff must allege that: (1) he had a valid property interest and (2) 'defendants infringed on that . . . right in an arbitrary or irrational manner.'" *Cherry v. N.Y.C. Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *28 (E.D.N.Y. Sept. 29, 2017) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014)). Conduct shocks the conscience where it is "truly brutal and offensive to human dignity." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (citation, quotation marks, and alteration omitted).

However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (citation and quotation marks omitted)); *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 147 (S.D.N.Y. 2016) (same); *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 385 (S.D.N.Y. 2014) (same), *aff'd*, 622 F. App'x 38 (2d Cir. 2015). That is, "substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources." *Roman v. Velleca*, No. 11-CV-1867, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) (citation omitted).

Defendants argue both that Plaintiff fails to identify facts that are "offensive to human dignity" or otherwise sufficient to state a substantive due process claim, (Defs.' Mem. 10), and

17

that Plaintiff's substantive due process claim "overlaps entirely" with his procedural due process claim, (Defs.' Reply 7). The Court need only address the latter point. "Putting aside whether there is any plausible theory under which [Defendants'] alleged conduct could be considered 'conscience-shocking,'" *Cronin v. St. Lawrence*, No. 08-CV-6346, 2009 WL 2391861, at *8 (S.D.N.Y. Aug. 5, 2009) (citation omitted), Plaintiff's substantive due process claim is entirely duplicative of his procedural due process claim. That is, the substantive due process claim "seek[s] to remedy the same harm and challenge the same conduct" as in his procedural due process claim. *Rother v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013). The Complaint alleges that Plaintiff was unable to get the proper signature for his EMT-P recertification form, asked Myers for advice, and was told to submit the form without the signature, (*see* Compl. § E, ¶¶ 4–6); that, some months later, Myers called Plaintiff to inform him of an investigation into a suspected forged signature on the form, (*id.* ¶¶ 7–9); that Plaintiff thereafter met with Myers and Fortune in an interrogation room at the State Trooper Barracks, (*id.* ¶¶ 10–11); that at the meeting Plaintiff denied forging a signature, causing Fortune to yell that Plaintiff was lying, (*id.* ¶¶ 12–13); that Myers and Fortune did not show Plaintiff the witness statements accusing him of forgery because they stated they did not have them in their possession, (*id.* ¶ 14); that Myers and Fortune presented Plaintiff with a surrender form and stated that, if he did not sign it, he would "go to jail" immediately, (*id.* ¶¶ 15–16); and that, under intense duress, Plaintiff signed the form and surrendered his license, (*id.* ¶¶ 16–17). In other words, Plaintiff's substantive due process claim is premised on precisely the same set of facts and seeks to remedy the same conduct as in his procedural due process claim; the Complaint alleges no facts that separate the two claims.[7] Accordingly, "[b]ecause the claim for substantive

---

[7] Plaintiff argues in response that Defendants' conduct can be explained by the fact that

due process is subsumed by" the procedural due process claim, "it must be dismissed." *Rother*, 970 F. Supp. 2d at 100; *see also Cherry*, 2017 WL 4357344, at *29 ("Plaintiff fails to state a claim for a violation of substantive due process because [that] claim is based on the same facts as his procedural due process claim."); *Ratajack*, 178 F. Supp. 3d at 147 (holding that "the overwhelming majority of [the plaintiff's] claims fall into ambit of other provisions of the Constitution," including the Due Process Clause, "thereby closing off [the plaintiff's] ability to seek relief by invoking the concept of substantive due process"); *Monko v. Cusack*, No. 11-CV-1218, 2013 WL 5441724, at *3 (N.D.N.Y. Sept. 27, 2013) (dismissing substantive due process claim where it "overlaps both his procedural due process claim and his retaliation claim" (citing *Rother*, 2013 WL 4774484, at *14)).

### 4. Equal Protection Claim

Defendants argue that Plaintiff fails to state an equal protection claim. (*See* Defs.' Mem. 12–15.) The Court agrees.

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996). In other words, "the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective

---

they were worried someone might discover that they had granted Plaintiff's recertification without the proper signature, and thus sought to quickly be rid of Plaintiff before getting in trouble themselves. (Pl.'s Mem. 16, 19.) Yet, nowhere in Plaintiff's Complaint are these facts, or anything along these lines, alleged. (*See generally* Compl. § E.) "[T]he Court [will] not rely on factual assertions made for the first time in Plaintiff's opposition brief, as it is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.'" *Troy v. City of New York*, No. 13-CV-5082, 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) (ultimately quoting *O'Brien v. Nat'l Prop. Analyst Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)). Moreover, these facts are relevant to both Plaintiff's substantive and procedural due process claims, and thus it is still the case that no facts separate the two claims.

treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (citation, quotation marks, and emphasis omitted). Put succinctly, to state an equal protection violation, a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citation omitted).

While the Equal Protection Clause is typically invoked to bring lawsuits claiming discrimination based on membership in a protected class such as race, religion, or national origin, where, as here, there is no allegation of membership in a protected class, the plaintiff may still prevail on either a "class of one" or "selective enforcement" theory. *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013). A "class-of-one" claim requires the plaintiff allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation omitted). That is, the plaintiff must allege that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (citation and quotation marks omitted). A class-of-one plaintiff must show "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quotation marks omitted). "[T]his pleading standard is demanding." *Hampshire Recreation, LLC v. Village of Mamaroneck*, No. 14-CV-7228, 2016 WL 1181727, at

*6 (S.D.N.Y. Mar. 25, 2016) (citation and quotation marks omitted), *aff'd*, 664 F. App'x 98 (2d Cir. 2016).

A "selective enforcement" claim requires the plaintiff show both (1) that "he, compared with others similarly situated, was selectively treated" and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Vaher*, 916 F. Supp. 2d at 433 (quotation marks and alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)); *see also LaTrieste Rest v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999) (noting that "both elements" generally must be satisfied to state a selective enforcement claim). Although "there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory," with "some courts evaluat[ing] whether a comparator is similarly situated under the same standard used in 'class of one' equal protection claims" and other courts "apply[ing] a less demanding standard to selective enforcement claims," *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7–8 (S.D.N.Y. 2017) (citations omitted) (collecting cases), it is clear that, at a minimum, some showing of comparison with others similarly situated is required.

Here, Plaintiff "has failed to allege or identify a single similarly situated individual who was treated differently" by Defendants. *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *12 (S.D.N.Y. Oct. 13, 2010) (citation, alteration, and quotation marks omitted), *modified in part on reconsideration*, 2011 WL 4011449 (Sept. 8, 2011), *aff'd*, 518 F. App'x 55 (2d Cir. 2013). The Complaint identifies no other EMT-P — or indeed any other individual — who was investigated for recertification issues, coerced into resigning, or is otherwise similarly

situated to Plaintiff.  Plaintiff thus offers no basis with which to evaluate his class-of-one or selective enforcement claim.  Accordingly, his equal protection claim must fail.  *See C-Tech of New Haven, Inc. v. Univ. of Conn. Health Ctr.*, No. 15-CV-1058, 2016 WL 3620713, at *3 (D. Conn. June 29, 2016) (dismissing equal protection claim where the complaint "refer[red] to no comparators"); *Walzer v. Town of Orangetown*, No. 13-CV-7971, 2015 WL 1539956, at *6 n.5 (S.D.N.Y. Apr. 7, 2015) (holding that the plaintiff had not stated an equal protection claim where "he ha[d] provided no comparators"); *Bishop*, 2010 WL 4159566, at *11 (dismissing equal protection claim where the plaintiff failed to allege any similarly situated individuals were treated differently).

### 5.  Section 1981 Claim

Plaintiff appears to bring a claim of intentional racial discrimination under 42 U.S.C. § 1981.  (*See* Compl. § B, ¶ 1.)  "In order to establish a claim under § 1981, a plaintiff must allege facts, which if proven to be true, would establish the following three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of his or her race; and (3) that the defendant discriminated in connection with one of the statute's enumerated activities."  *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp. 2d 592, 595–96 (S.D.N.Y. 2004) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)).  These "enumerated activities" include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  Plaintiff fails to allege any facts whatsoever supporting a § 1981 claim.  Plaintiff does not allege that he is a member of a racial minority, that Defendants discriminated against him on the basis of his race, or that such discrimination was intentional.  Accordingly, Plaintiff fails to state a § 1981 claim.

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted.[8]

Plaintiff's procedural due process claim, as well Plaintiff's claims seeking damages against Defendants in their official capacities, are dismissed *with* prejudice.

Plaintiff's substantive due process, equal protection, and § 1981 claims are dismissed *without* prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain all of the claims and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 21.)

SO ORDERED.

Dated: March 13, 2019
      White Plains, New York

                                          KENNETH M. KARAS
                                          United States District Judge

---

[8] Because the Court concludes that Plaintiff fails to state any claim, it need not consider at this time the arguments that Defendants are entitled to qualified immunity, (*see* Defs.' Mem. 16–17), or that Plaintiff fails to establish the personal involvement of Zucker and Burns in any constitutional deprivation, (*see id.* at 18).